

# 12 CIV 8907

James J. McGuire
Vincent Filardo, Jr.
MISHCON DE REYA NEW YORK LLP
750 7th Avenue, 26th Fl.
New York, NY 10019
(212) 612-3270 (phone)
(212) 612-3297 (fax)



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------x

GOD, GOLD AND MOORE LLC, d/b/a        :
PSYCHO BUNNY,                          :        Index No. _____
                                       :
                   Plaintiff,          :
                                       :        **COMPLAINT AND JURY DEMAND**
             v.                        :
                                       :        **ECF CASE**
NIKE, INC.                             :
and JOHN DOES 1 THROUGH 25,            :
                                       :
                   Defendants.         :
-------------------------------------------------x

      Plaintiff God, Gold and Moore LLC, d/b/a Psycho Bunny, ("God & Gold" or "Psycho

Bunny"), through its counsel, Mishcon de Reya New York LLP, as and for its Complaint against

Nike, Inc. ("Nike") and John Does 1 Through 25, alleges as follows:

## INTRODUCTION

    1.     This is a civil action arising under federal law and that of the State of New York,

alleging claims for trademark infringement under the Lanham Act, false designation of origin

and unfair competition under the Lanham Act, dilution of registered trademarks under the

Lanham Act, common law trademark infringement, common law unfair competition, and

violation of New York General Business Law § 360-l.

    2.     Plaintiff seeks preliminary and permanent equitable relief, monetary relief, and all

other appropriate remedies to which it is entitled under federal and state law.

3.    Plaintiff's owners, Robert Godley and Robert Goldman, created the Psycho Bunny brand of clothing, bags, and accessories in 2005. God & Gold exclusively designs, sells, and/or licenses the brand for sale. Since 2005, the Psycho Bunny brand has grown to represent high-quality and distinctive goods. The brand has been publicly worn by celebrities and famous athletes such as actors Jim Carey and Ken Jeong, singer Joe Jonas, hip-hop producer Swizz Beats, New York Yankees third-baseman Alex Rodriguez, New York Giants defensive end Osi Umenyiora, New York Red Bulls striker Thierry Henry, Los Angeles Lakers point guard Steve Nash, and Miami Heat star Dwayne Wade.

4.    God & Gold's products are now sold throughout the United States, Latin America, Asia, and Europe, through the internet and retail establishments such as Nordstrom, Neiman Marcus, and Barney's New York. The Psycho Bunny name and image are now strong, distinctive, and famous identifiers of genuine God & Gold products.

5.    The Psycho Bunny name and image are protected by two valid and registered trademarks held by RG2, LLC ("RG2"), a company wholly owned by Robert Godley and Robert Goldman. RG2 has exclusively licensed both of these marks to God & Gold for all lawful purposes.

6.    Upon information and belief, beginning in or about February 2012, Nike manufactured, advertised, and sold a line of shirts called "Sinister Hare," a name similar to the protected Psycho Bunny name. These shirts feature an image confusingly similar to the protected Psycho Bunny image. Upon information and belief, the Sinister Hare line was and is advertised and sold by Nike in the same markets as God & Gold's products.

7.    Upon information and belief, Nike -- as wholesaler -- has sold and/or distributed the "Sinister Hare" shirts to certain unidentified retailers, John Does 1 Through 25, who are re-selling the "Sinister Hare" shirts in the same markets as God & Gold's products.

8.     Defendants' conduct threatens the name and image of Psycho Bunny as consumers have been and continue to be confused about the source, sponsorship, and/or affiliation of Defendants' products, thereby harming the value of the Psycho Bunny trademarks. Unless Defendants' infringing and diluting actions are enjoined, Plaintiff will suffer irreparable injury. Additionally, because Defendants' infringement is wilfull, Plaintiff is entitled to monetary damages and exemplary damages.

## PARTIES

9.     Plaintiff God & Gold is a limited liability company organized under the laws of the State of New Jersey with a principal place of business at 15 West 26th Street, 4th Floor, New York, NY 10010. Messrs. Robert Godley and Robert Goldman wholly own God & Gold, which is the exclusive licensee of the Psycho Bunny word and image trademarks.

10.     Upon information and belief, Nike is a corporation organized under the laws of the State of Oregon with global headquarters at One Bowerman Drive, Beaverton, Oregon 97005. Nike is a designer, developer, and international marketer and seller of footwear, apparel, equipment, and accessory products. Upon information and belief, Nike operates throughout the United States and an additional 160 countries. Nike's products are sold in retail outlets and online throughout New York, including but not limited to Niketown, located at 6 East 57th Street, New York, New York 10022.

11.     Upon information and belief, John Does 1 Through 25 are retailers located in New York and throughout the United States who are selling Nike's "Sinister Hare" t-shirts through their websites and brick-and-mortar stores.

**JURISDICTION AND VENUE**

12.     This Court has original jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1121.  This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are diverse and the damages sought by Plaintiff exceed $75,000 exclusive of interest and costs.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367 with respect to Plaintiff's claims arising under the laws of the State of New York, including those arising under the New York General Business Law.

13.     This Court has personal jurisdiction over Nike, because it is present in this District, operates one or more stores in this District, engages in substantial business in this District, and upon information and belief, sells its infringing goods in this District.

14.     This Court has personal jurisdiction over John Does 1 Through 25 because, upon information and belief, they are present, operate one or more stores, engage in substantial business, and sell infringing goods in this District.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because this is a Judicial District in which a substantial part of the events giving rise to the claim occurred.

**FACTUAL BACKGROUND**

A.     <u>The Psycho Bunny Brand and Trademarks</u>

16.     Partners Robert Godley and Robert Goldman developed the Psycho Bunny name and image during Spring 2005 with their first collection of handmade neckties.  The following year, Messrs. Godley and Goldman filed two applications with the United States Patent and Trademark Office ("USPTO") for trademark protection of the name and image they created.

17.     In or about 2007, Messrs. Godley and Goldman formed RG2, LLC ("RG2") to operate as the holder of the then-pending Psycho Bunny trademark applications.

18.    RG2 granted God & Gold an exclusive license in the Psycho Bunny name and image for all lawful purposes.

19.    Since 2005, God & Gold has developed and marketed a brand of clothing, bags, and accessories using the Psycho Bunny name and image. God & Gold has sold and presently sells its goods through its website (www.psycho-bunny.com) as well as in retail establishments throughout the United States, Latin America, Asia, and Europe, including through Neiman Marcus, Barney's New York, and other well-known proprietors.

20.    On or about February 16, 2010, the United States Patent and Trademark Office ("USPTO") granted the trademark application for the word mark "Psycho Bunny" ("Word Mark"). The Registration Number for the Word Mark is 3750802; the International Registration Number is 0983842. The Word Mark covers the following:

# Psycho Bunny

21.    On or about May 18, 2010, the USPTO granted the trademark application for the Psycho Bunny image ("Image Mark"). The Registration Number for the Image Mark is 3790282; the International Registration Number is 0983667. The Image Mark is registered in International Class 25 on goods including: "Bow ties; Canvas shoes; Dress shirts; Golf Shirts; Leather shoes; Polo shirts; Running shoes; Sandals; Shirts; Shirts for suits; Short-sleeved or long-sleeved t-shirts; Short-sleeved shirts; Sport shirts; Sweat shirts; T-shirts; Ties; Track and field shoes; Training shoes." The Image Mark is described in the Registration Certificate as follows: "The mark consists of [a] stylized skull with rabbit ears and two buck-teeth over two stylized crossed bones." The Image Mark appears in the Registration Certificate as follows:



(The Psycho Bunny Image Mark and Word Mark are hereinafter collectively referred to as "Trademarks").

22.    God & Gold has devoted substantial time, effort, and money to create, market, promote, and sell its apparel and accessories featuring the Trademarks.  God & Gold has expended hundreds of thousands of dollars in connection with publicizing and promoting designs bearing or featuring the Trademarks.

23.    The Psycho Bunny brand has been publicly worn by celebrities and famous athletes such as actors Jim Carey and Ken Jeong, singer Joe Jonas, hip-hop producer Swizz Beats, New York Yankees third-baseman Alex Rodriguez, New York Giants defensive end Osi Umenyiora, New York Red Bulls striker Thierry Henry, Los Angeles Lakers point guard Steve Nash, and Miami Heat guard Dwyane Wade.

24.    As a result of God & Gold's widespread advertising, publicity, promotion, and offering for sale products bearing the Trademarks, the Trademarks have become well-known and famous symbols of quality, identified in the minds of the trade and the purchasing public as creations of God & Gold.  The Trademarks have achieved secondary meaning as identifiers of high-quality products from God & Gold and as such have become highly valuable.

**B.**     **Nike Infringes The Psycho Bunny Trademarks.**

25.     Nike is a giant in the industry, a Fortune 500 company with over $24 billion in global revenue.

26.     Nike's "Sinister Hare" line of shirts bear an image of a stylized head of a rabbit above two stylized crossed bones.

27.     On or about February 2012, through its customer's comments, God & Gold became aware of a line of shirts marketed by Nike under the name "Sinister Hare." Specifically, God & Gold received comments through its Facebook site and sales representatives in retail stores inquiring as to whether it had created a new logo or licensed and/or launched a joint-venture with respect the Sinister Hare shits. The customer and retailer comments reveal that the consuming public is confused about the origin of the Sinister Hare shirts and its relationship to Plaintiff.

28.     Upon information and belief, at all times relevant hereto, Nike had knowledge of the Trademarks, including RG2's exclusive right to use and license them and the goodwill associated therewith.

29.     Upon information and belief, Nike manufactured and/or caused to be manufactured, and has imported, promoted, advertised, distributed, sold, and/or offered for sale, the Sinister Hare shirts both in brick-and-mortar stores as well as through its website reaching, upon information and belief, into the same markets where Psycho Bunny's merchandise is sold.

30.     Upon information and belief, Nike -- as wholesaler -- has sold and/or distributed Sinister Hare shirts to certain retailers, Defendant John Does 1 Through 25, who have sold and continue to sell the shirts through their websites and in brick-and-mortar establishments.

31.    The net effect of Nike's actions has been and will continue to be to confuse consumers into believing that Nike's infringing Sinister Hare line of shirts are produced by, in conjunction with, and/or under license from God & Gold.

32.    Upon information and belief, Defendants have been and/or continue to conduct their infringing activities within this District and elsewhere throughout the United States.  As a result, Defendants have been and/or are defrauding the consuming public and Plaintiff for Defendants' own benefits.

33.    Defendants' use of the infringing Sinister Hare name and image, including the manufacture, importation, promotion and advertising, distribution, sale, and/or offering for sale of the infringing Sinister Hare shirts, is without Plaintiff's consent or authorization.  Neither of the Trademarks have ever been assigned or licensed to Defendants.

34.    Upon information and belief, Defendants have not filed for a trademark application on either the "Sinister Hare" name or the image depicted on the "Sinister Hare" line of shirts.

35.    Defendants' above-identified infringing activities have caused and/or are likely to cause confusion, deception, and mistake in the minds of consumers, the public, and the trade. Moreover, Defendants' wrongful conduct has and/or is likely to create a false impression and deceive customers, the public, and the trade into believing that there is some connection, authorization, or association between Plaintiff's genuine goods and Nike's infringing "Sinister Hare" line of shirts.

36.    Upon information and belief, Defendants have been and/or are engaging in the above-described illegal activities willfully, knowingly, and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights with the intent of trading on the goodwill and

reputation of Plaintiff. If Defendants' intentional infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff will be irreparably harmed.

37.     As a consequence of Nike's "Sinister Hare" image featuring stylized slanted eyes, upon information and belief, the image may be offensive to some in the Asian community and markets. Confusion as to the origin of the "Sinister Hare" line is likely to lead to the incorrect assumption that Plaintiff designed and is selling an offensive image that will harm Plaintiff in its international and national markets.

**C.     Nike Has Refused To Cease And Desist Selling The Sinister Hare Shirts.**

38.     On or about June 7, 2012, Plaintiff, by and through counsel, sent Nike a cease-and-desist letter ("June 7 Letter"). Plaintiff demanded that, owing to the substantial similarity between the Psycho Bunny mark and Nike's "Sinister Hare" image and name, and the consequent threat posed to Plaintiff's business and Trademarks, Nike immediately cease and desist all use of the "Sinister Hare" image and name.

39.     Plaintiff further demanded that Nike deliver-up for destruction all material and products to which the "Sinister Hare" image and name have been applied, withdraw, cancel, and/or delete any corporate names, domain names, trademark applications, and/or trademark registrations for or including the "Sinister Hare" image and undertake in writing never in the future to make any use of the "Sinister Hare" or any other image similar to the Psycho Bunny mark absent prior written authority from Plaintiff.

40.     On or about July 3, 2012, Nike responded to Plaintiff's June 7 Letter by rejecting the cease-and-desist demand.

41.     On or about July 6, 2012, Plaintiff, by and through counsel, again demanded Nike cease-and-desist marketing and selling the "Sinister Hare" line of shirts ("July 6 Letter").

42.    On or about August 6, 2012, Nike again rejected Plaintiff's cease and desist demands.

**D.    Expert Surveys Show Actual Consumer Confusion.**

43.    At or about that point, Plaintiff, through its counsel, searched for and interviewed several possible experts and then retained Dr. Philip Zerrillo, a leading authority on marketing and branding, to perform an analysis of the Psycho Bunny trademarks and "Sinister Hare" image and name, and opine on the potential for and existence of consumer confusion between the two. To perform his analysis, Dr. Zerrillo relied upon his own expertise in marketing and branding, reviewed and considered a wide range of marketing, branding, and legal writings, and conducted three separate surveys to over 600 respondents over the Internet.

44.    Dr. Zerrillo concluded that, in his expert opinion, significant confusion exists between the brands of Psycho Bunny and Sinister Hare, and that the confusion exists with respect to both the Image Mark and Word Mark.

45.    The results of the Internet survey establish that consumer confusion is especially strong with respect to the Psycho Bunny image and Sinister Hare image.

46.    When shown both images, over 61% of consumer survey respondents believed that the two products were and are owned, affiliated or associated with the same company.

47.    In single product comparisons, a significant number of survey respondents viewing the Sinister branded product believed that it was actually a Psycho Bunny product. Specifically, more than twice as many respondents believed the Sinister Hare product was and is owned associated or affiliated with Psycho Bunny.

48.    The results of the Internet survey establish that consumer confusion is also strong with respect to the Psycho Bunny Word Mark and Sinister Hare moniker.  When shown both the

Psycho Bunny and Sinister Hare brand names, a statistically significant number of survey

respondents believed that the names were associated, affiliated, or owned by the same company.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Trademark Infringement -- 15 U.S.C. § 1114)
(Against All Defendants)

49.    Plaintiff restates and incorporates the allegations of Paragraphs 1 through 48

above as if set forth fully herein.

50.    RG2 is the registered owner of the Trademarks, and God & Gold is the exclusive

licensee of the Trademarks.

51.    The image used by Nike on its infringing "Sinister Hare" shirts is substantially

similar to the registered Psycho Bunny Image Mark and constitutes a colorable imitation thereof.

52.    The term "Sinister Hare" is substantially similar to the registered Psycho Bunny

Word Mark and constitutes a colorable imitation thereof.

53.    Commencing at some time unknown to Plaintiff, Defendants, without Plaintiff's

consent, engaged in manufacturing or causing to be manufactured, importing, promoting and

otherwise advertising, distributing, selling, and/or offering for sale the infringing "Sinister Hare"

shirts, thereby infringing the Trademarks.

54.    Defendants have been and/or are manufacturing, importing, advertising,

distributing, selling, and/or offering for sale "Sinister Hare" shirts under the name that infringes

the Psycho Bunny Word Mark and bearing a image which infringes the Psycho Bunny Image

Mark.

55.    Defendants have been and/or are continuously infringing and/or enabling others to

infringe the Trademarks by providing the infringing "Sinister Hare" shirts for sale.

56.     Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among the general consuming public and trade as to the origin of Nike's infringing "Sinister Hare" shirts.

57.     Defendants' unlawful actions have caused and are continuing to cause damage to Plaintiff.

58.     Defendants' illegal actions constitute infringement of the Trademarks, in violation of Plaintiff's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

59.     Defendants have been and/or are using the Trademarks with full knowledge and/or willful disregard of Plaintiff's exclusive rights in the Trademarks.

60.     Defendants' conduct is intentionally willful, wanton, fraudulent, malicious, and undertaken with the intent to reap the benefit of Plaintiff's consumer goodwill and the fame and notoriety of the Trademarks.

61.     By reason of the foregoing, Defendants are liable to God & Gold for: (a) an amount representing three (3) times God & Gold's damage and/or Defendants' illicit profits; and (b) reasonable attorneys' fees, investigative fees, and pre-Judgment interest pursuant to 15 U.S.C. § 1117.

62.     By reason of the foregoing, God & Gold is further entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

## SECOND CAUSE OF ACTION
(False Designation of Origin and Unfair Competition -- 15 U.S.C. § 1125(a))
(Against All Defendants)

63.    Plaintiff restates and incorporates the allegations of Paragraphs 1 through 48 above as if set forth fully herein.

64.    RG2 is the registered owner of the Trademarks, and God & Gold is the exclusive licensee of the trademarks.

65.    The image used by Nike on its infringing "Sinister Hare" shirts is substantially similar to the registered Psycho Bunny Image Mark and constitutes a colorable imitation thereof.

66.    The term "Sinister Hare" is substantially similar to the registered Psycho Bunny Word Mark and constitutes a colorable imitation thereof.

67.    Upon information and belief, Nike's infringing "Sinister Hare" shirts have been and/or are advertised, promoted, offered for sale, sold, and distributed throughout this District and the United States.

68.    The use of the infringing name and image on Nike's infringing "Sinister Hare" shirts has and/or is likely to cause confusion or mistake and/or was designed to deceive the consumer as to the affiliation, connection, or association between Nike and Plaintiff or as to the origin, sponsorship, or approval of the "Sinister Hare" shirts.

69.    Defendants' infringing actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

70.    By reason of the foregoing, Defendants are liable to God & Gold for: (a) an amount representing three (3) times God & Gold's damage and/or Defendants' illicit profits and (b) reasonable attorneys' fees, investigative fees, and pre-Judgment interest pursuant to 15 U.S.C. § 1117.

71.     By reason of the foregoing, God & Gold is further entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

### THIRD CAUSE OF ACTION
(Federal Trademark Dilution -- 15 U.S.C. § 1125(c))
(Against All Defendants)

72.     Plaintiff restates and incorporates the allegations of Paragraphs 1 through 48 above as if set forth fully herein.

73.     RG2 is the registered owner of the Trademarks, and God & Gold is the exclusive licensee of the trademarks.

74.     The image used by Nike on its infringing "Sinister Hare" shirts is substantially similar to the registered Psycho Bunny Image Mark and constitutes a colorable imitation thereof.

75.     The term "Sinister Hare" is substantially similar to the registered Psycho Bunny Word Mark and constitutes a colorable imitation thereof.

76.     Plaintiff's Trademarks are famous and well known throughout the United States, and within the meaning of 15 U.S.C. § 1125(c), having been used nationally for over seven years.

77.     As a result of God & Gold's extensive advertising and promotion of the Trademarks, sale of goods bearing the Trademarks, and registration and protection of the Trademarks, the Trademarks have become famous and well known and are uniquely and exclusively associated with Psycho Bunny and branded Psycho Bunny designer fashion accessories and apparel.

78.     Defendants, by virtue of their infringing activities, have been and/or are engaged in a commercial use of the Trademarks in commerce.

79.     Defendants' infringing activities have caused actual dilution and have disparaged, damaged, and lessened the distinctiveness of the Trademarks by blurring and tarnishing the Trademarks.

80.     Defendants' conduct is intentionally willful, wanton, fraudulent, malicious, and undertaken with the intent to reap the benefit of Plaintiff's consumer goodwill and the fame and notoriety of the Trademarks.

81.     By reason of the foregoing, Defendants are liable to God & Gold for: (a) an amount representing three (3) times God & Gold's damage and/or Defendants' illicit profits and (b) reasonable attorneys' fees, investigative fees, and pre-Judgment interest pursuant to 15 U.S.C. § 1117.

82.     By reason of the foregoing, God & Gold is further entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

**FOURTH CAUSE OF ACTION**
(Common Law Trademark Infringement)
(Against All Defendants)

83.     Plaintiff restates and incorporates the allegations of Paragraphs 1 through 48 above as if set forth fully herein.

84.     Commencing at some time unknown to Plaintiff, Defendants manufactured, advertised and distributed in commerce, offered for sale, and/or sold the infringing "Sinister Hare" shirts without Plaintiff's consent, thereby infringing the Trademarks.

85.     As a result of the confusing similarity of the brand name and image employed by Nike, Defendants' manufacture, advertising, distribution, offering for sale, and/or sale of the infringing "Sinister Hare" shirts constitutes an infringement of Plaintiff's exclusive common law rights in and to the Trademarks, in that such use is likely to cause confusion, deception, and,

mistake in the minds of the public with respect to the origin, source, and affiliation of the infringing "Sinister Hare" shirts.

86.    Defendants' use of a name and image confusingly similar to the Trademarks to identify the infringing "Sinister Hare" shirts and other conduct violates ad infringes Plaintiff's common law trademark rights in and to the Trademarks.

87.    Defendants' conduct constitutes common law trademark infringement.

88.    Defendants' conduct is intentionally willful, wanton, fraudulent, malicious, and undertaken with the intent to reap the benefit of Plaintiff's consumer goodwill and the fame and notoriety of the Trademarks.

89.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered monetary damages, greater than the jurisdictional amount of $75,000 but in an amount to be determined at trial, plus pre- and post-Judgment interest thereon.

90.    Defendants' misconduct was intentional, willful, wanton, malicious, and of such egregious nature that punitive damages are appropriate in addition to any compensatory damages for harm done to Plaintiff.

91.    Defendants' conduct is and has caused immediate and irreparable injury to Plaintiff and to its good will and reputation and will continue to both damage it and deceive the public unless enjoined by this Court.

## FIFTH CAUSE OF ACTION
(Common Law Unfair Competition)
(Against All Defendants)

92.    Plaintiff restates and incorporates the allegations of Paragraphs 1 through 48 above as if set forth fully herein.

93.    Defendants' use of the Sinister Hare image and name is confusingly similar to the Trademarks, and Defendants' conduct falsely suggests an association with, sponsorship by, licensing by, or authorization by Plaintiff.

94.    Defendants' use of the confusingly similar Sinister Hare name and image to the Trademarks for products similar or identical to those sold by Plaintiff and other conduct was and is intended to deceive or confuse the public and profit unjustly from Plaintiff's goodwill in the Trademarks.

95.    Defendants' actions constitute unfair competition with Plaintiff under the common law of the State of New York.

96.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered monetary damages, greater than the jurisdictional amount of $75,000 but in an amount to be determined at trial, plus pre- and post-Judgment interest thereon.

97.    Defendants' misconduct was intentionally willful, wanton, malicious, and of such egregious nature that punitive damages are appropriate in addition to any compensatory damages for harm done to Plaintiff.

98.    Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff, its good will, and reputation, and will continue to both damage it and deceive the public unless enjoined by this Court.

## SIXTH CAUSE OF ACTION
(Violation of N.Y. Gen. Bus. L. § 360-1)
(Against All Defendants)

99.    Plaintiff restates and incorporates the allegations of Paragraphs 1 through 48 above as if set forth fully herein.

100.    The Trademarks are distinctive and have acquired secondary meaning in the marketplace.

101.    Defendants' use of the confusingly similar Sinister Hare image and name to the Trademarks and other conduct has reduced the selling power of the Trademarks and diminished the ability of the Trademarks to serve as source and product identifiers.

102.    Defendants' use of the confusingly similar Sinister Hare image and name to the Trademarks and other conduct has tarnished and reduced the reputation and standing of the Trademarks in the eyes of consumers as identifiers of Plaintiff's designs.

103.    Defendants' conduct is intentionally willful, wanton, fraudulent, malicious, and undertaken with the intent to reap the benefit of Plaintiff's consumer goodwill and the fame and notoriety of the Trademarks.

104.    Defendants' conduct violates Section 360-1 of the New York General Business Law.

105.    As a direct and proximate result of Defendants' willful and wanton actions and conduct, Plaintiff's business reputation and the good will associated with the Trademarks have been tarnished, and the favorable associations of the Trademarks have been damaged.

106.    By reason of the foregoing, God & Gold is entitled to injunctive relief pursuant to N.Y. Gen. Bus. L. § 360-1.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff God, Gold and Moore LLC, d/b/a Psycho Bunny, respectfully prays that the Court grant the following relief against Defendants Nike, Inc. and John Does 1 Through 25, and enter Judgment as follows:

A.      Declaring that the "Sinister Hare" brand name and image infringes the Trademarks in violation of federal, state, and common law;

B.      Preliminarily during the pendency of this action, and permanently after final hearing, enjoining Defendants, their respective officers, agents, servants, employees, attorneys, and those persons in active concert or participation with any of them from: (i) manufacturing, advertising, displaying, distributing, selling, or otherwise using the "Sinister Hare" name or image, and selling any apparel bearing that name or image, including on its line of "Sinister Hare" t-shirts; and (ii) from unfairly competing with Plaintiff in any manner;

C.      Directing Defendants, pursuant to 15 U.S.C. §§ 1116(a) or otherwise, to file with this Court and serve on God & Gold within thirty (30) days of entry of any injunction, or such other time as directed by the Court, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

D.      Ordering Defendants to sequester, forfeit, and deliver up for destruction: (i) all "Sinister Hare" shirts and components thereof in their possession, custody, and/or control or in the possession, custody, and/or control of any of their agents; (ii) all catalogues, advertising, and promotional materials in their possession, custody, or control or in the possession, custody, or control of any of their agents, which feature the infringing "Sinister Hare" shirts or which the Court shall find to have facilitated Defendants' acts of unfair competition with Plaintiff or their dilution of the Trademar

E. Ordering an accounting and disgorgement of all of Defendants' profits resulting from infringement and profits and gains of any kind resulting from Defendants' willful violations, in an amount to be determined at trial, and three times the amount thereof pursuant to 15 U.S.C. § 1117(a);

F. Ordering Defendants to pay God & Gold actual damages greater than the jurisdictional amount of $75,000 but in an amount to be determined at trial, plus pre- and post-Judgment interest thereon;

G. Ordering Defendants to pay God & Gold's reasonable attorneys' fees, disbursements, costs, and expenses in connection with this action, including those permitted under 15 U.S.C. § 1117(a);

H. Ordering Defendants to pay punitive damages as applicable under law; and

I.        Granting God & Gold such further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff God, Gold and Moore LLC, d/b/a Psycho Bunny, hereby respectfully demands

trial of its causes of action herein before a jury.

Dated: New York, New York          Respectfully submitted,
      December 7, 2012

                              MISHCON DE REYA NEW YORK LLP

                              By: _Vincent_____

                                    James J. McGuire
                                    Vincent Filardo, Jr.

                                    Mishcon de Reya New York LLP
                                    750 7th Avenue, 26th Floor
                                    New York, NY 10019
                                    Telephone (212) 612-3270
                                    Facsimile (212) 612-3297
                                    james.mcguire@mishcon.com
                                    vincent.filardo@mishcon.com

                                    *Attorneys for Plaintiff God, Gold and Moore*
                                    *LLC d/b/a Psycho Bunny*