UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- x

GOD, GOLD AND MOORE, LLC, d/b/a      :
PSYCHO BUNNY,                   :      Index No. 12-CV-8907 (PKC)

               Plaintiff,    :
                               :      ECF Case

          - against -        :

                               :
NIKE, INC.                          :
and JOHN DOES 1-25,          :

               Defendants.   :
                               :
                               :

-------------------------------------------------------------------------- x


## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY


DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Defendant Nike, Inc.*

Of Counsel:

Andrew L. Deutsch
Tamar Y. Duvdevani
Melissa A. Reinckens
Marc E. Miller

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................. 1

STATEMENT OF FACTS ..................................................................... 3

    I.       NIKE'S "SINISTER HARE" DESIGN .................................... 3

    II.      PLAINTIFF'S PSYCHO BUNNY MARKS ........................... 5

    III.    PLAINTIFF'S PSYCHO BUNNY GRAPHIC MARK IS ONE OF MANY IN A CROWDED FIELD ............................................ 6

    IV.   PLAINTIFF'S DELAY IN SEEKING JUDICIAL INTERVENTION ................ 6

ARGUMENT ....................................................................................... 7

    I.       PLAINTIFF HAS UNDULY DELAYED IN SEEKING INJUNCTIVE RELIEF AND ITS MOTION SHOULD BE DENIED ON THIS BASIS ALONE ....................................... 7

    II.      PLAINTIFF HAS FAILED TO MEET ITS BURDEN ON A MOTION FOR A PRELIMINARY INJUNCTION ............................. 8

          A.     The Stringent Standard for a Preliminary Injunction ............... 8

          B.     Plaintiff is Unlikely to Succeed on the Merits of its Claim .................... 10

               1.    Plaintiff's PSYCHO BUNNY Marks Are Weak ....................... 11

               2.    The PSCYHO BUNNY Graphic Mark is Dissimilar from Nike-Branded Apparel Bearing the "Sinister Hare" Design, and the Dissimilarities are Heightened by Nike's Prominent Use of its House Marks on "Sinister Hare" Design Shirts........... 12

               3.    The Parties' Products Are Not Sold in the Same Channels of Trade ...................................................... 15

               4.    There is Insufficient Evidence that Plaintiff will Bridge the Gap and Branch into Nike's Sports Apparel Market ................. 16

               5.    No Evidence of Actual Confusion Exists ................................... 17

               6.    Nike Developed its Sinister Hare Graphic Independently; No Bad Faith Exists ................................................. 20

               7.    Quality ........................................................................ 21

               8.    Sophistication of the Relevant Consumer Group Does Not Favor Plaintiff ............................................... 21

          C.     Plaintiff has not Shown Irreparable Harm ............................... 21

          D.     The Balance of Hardships and the Public Interest Strongly Favors Nike ................................................................ 22

III.    PLAINTIFF'S UNFAIR COMPETITION CLAIM IS NOT LIKELY TO SUCCEED .................................................................................................. 23

IV.    EXPEDITED DISCOVERY IS NOT WARRANTED ..................................... 24

V.    ANY PRELIMINARY INJUNCTION WOULD REQUIRE A SUBSTANTIAL BOND .................................................................................. 24

CONCLUSION ............................................................................................................. 25

EAST\54135443.9

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness. LLC,*
    447 F.Supp.2d 266 (S.D.N.Y. 2006)...................................................................................16

*Agrippa, LLC v. Bank of America, N.A.,*
    10 Civ. 9478, 2011 WL 102677 (S.D.N.Y. Jan. 11, 2011).......................................................9

*Bellamy v. Mount Vernon Hosp.,*
    No. 07-cv-1801 (SAS), 2009 WL 1835939 (S.D.N.Y. June 26, 2009) .................................22

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    910 F.2d 1049 (2d Cir. 1990)..........................................................................................25

*Brennan's Inc. v. Brennan's Rest., LLC,*
    360 F.3d 125 (2d Cir. 2004)............................................................................................15

*Dessert Beauty, Inc. v. Fox,*
    568 F. Supp. 2d 416 (S.D.N.Y. 2008)...........................................................................23

*Digital Sin, Inc. v. Does 1-176,*
    279 F.R.D. 239 (S.D.N.Y. 2012) ....................................................................................24

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006)......................................................................................................10

*Estee Lauder, Inc. v. The Gap, Inc.,*
    108 F.3d 1503 (2d Cir. 1997).........................................................................................16

*Faiveley Trans. Malmo AB v. Wabtec Corp.,*
    559 F.3d 110 (2d Cir. 2009)..............................................................................................7

*Federal Express Corp. v. Federal Espresso, Inc.,*
    No. 97-cv-1219, 1998 WL 690903 (N.D.N.Y. Sept. 30, 1998)..............................................16

*Gidatex, S.R.L. v. Campaniello Imports, Ltd.,*
    13 F. Supp. 2d 417 (S.D.N.Y. 1998).........................................................................8, 24

*GoSmile, Inc. v. Dr. Jonathan Lewis, D.M.D., P.C.,*
    769 F. Supp. 2d 630 (S.D.N.Y. 2011) (Castel, J.) ...........................................................9, 11

*Gruner+ Jahr USA Pub. v. Meredith Corp.,*
    991 F. 2d 1072 (2d. Cir. 1993)........................................................................................13

*Hutchison v. Essence Communications, Inc.*, *Hutchison v. Essence Communications, Inc.*,
769 F. Supp. 541 (S.D.N.Y. 1991) ..................................................................................18

*Jackson v. Am. Plaza Corp.*,
No. 08-cv-8980(PKC), 2009 WL 1158829 (S.D.N.Y. Apr. 28, 2009) (Castel, J.)...................9

*Jeffrey Milstein v. Greger, Lawlor, Roth Inc.*,
58 F.3d 27 (2d Cir.1995).....................................................................................................23

*Kelly-Brown v. Winfrey*,
No. 11-cv-7875(PAC), 2012 WL 701262 (S.D.N.Y. Mar. 6, 2012) ....................................24

*Lang v. Retirement Living. Pub. Co., Inc.*,
949 F.2d 576 (2d Cir. 1991).................................................................................................18

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*,
426 F.3d 532 (2d Cir. 2005).................................................................................................13

*M & G Electronics Sales Corp. v. Sony Kabushiki Kaisha*,
250 F. Supp. 2d 91 (E.D.N.Y. 2003) ...................................................................................22

*Michael Caruso an Co., Inc. v. Estefan Enterprises, Inc.*,
994 F. Supp. 1454 (S.D. Fla 1998), *aff'd,* 155 F.3d 353 (11th Cir. 1998)............................12

*Moore v. Consolidated Edison Co. of New York, Inc.*,
409 F.3d 506 (2d Cir. 2005)...................................................................................................9

*Nabisco Inc. v. Warner-Lambert Co.*,
220 F.3d 43 (2d Cir. 2000).............................................................................................13, 15

*New Look Party Ltd. v. Louise Parker Ltd.*,
11-cv-6433(NRB), 2012 WL 251976 (S.D.N.Y. Jan. 11, 2012) ....................................10, 22

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
704 F. Supp. 2d 305 (S.D.N.Y. 2010)..................................................................................13

*Next Phase Distrib., Inc. v. Does 1-27*,
284 F.R.D. 165 (S.D.N.Y. 2012) ....................................................................................24, 25

*One Indus., LLC v. Jim O'Neal Distrib., Inc.*,
578 F.3d 1154 (9th Cir. 2009) .............................................................................................12

*Original Joe's Inc. v. Pinsonneault Holdings, LLC*,
No. 09-cv-05203(CRB), 2009 WL 4254434 (N.D. Cal. 2009) .............................................12

*People's United Bank v. Peoplesbank*,
08 Civ. 01858, 2010 WL 2521069 (D. Conn. Jun. 17, 2010)..........................................10, 11

# TABLE OF AUTHORITIES
## (continued)

<u>Page</u>

*Plasmart, Inc. v. Wincell Int'l Inc.*,
442 F. Supp. 2d 53 (S.D.N.Y. 2006) (Castel, J.) ...................................................9

*Playtex Prods., Inc. v. Georgia-Pacific Corp.*,
390 F.3d 158 (2d Cir. 2004) ............................................................................20

*Polaroid Corp. v. Polaroid Elecs. Corp.*,
287 F.2d 492 (2d Cir. 1961) ..................................................................... passim

*Prof'l Sound Servs., Inc. v. Guzzi*,
349 F. Supp. 2d 722 (S.D.N.Y. 2004) ................................................................15

*Raghavendra v. Trustees of Columbia Univ.*,
No. 06 Civ. 6841, 2008 WL 2696226 (S.D.N.Y. July 2, 2008) ...............................7

*Salinger v. Colting*,
607 F.3d 68 (2d Cir. 2010) ..............................................................3, 9, 10, 22

*Star Indus., Inc. v. Bacardi & Co., Ltd.*,
412 F.3d 373 (2d Cir. 2005) ........................................................................11, 21

*THOIP v. Walt Disney Co.*,
690 F. Supp. 2d 218 (S.D.N.Y. 2010) ..........................................................19, 21

*Time, Inc. v. Petersen Publ'g Co. LLC*,
173 F.3d 113 (2d Cir. 1999) ............................................................................11

*Tough Traveler, Ltd. v. Outbound Prods.*,
60 F.3d 964 (2d Cir. 1995) ...............................................................................7

*Virgin Enterprises, Ltd. v. Nawab*,
335 F.3d 141 (2d Cir. 2003) ........................................................................17, 18

*Washington Nat. Ins. Co. v. Blue Cross and Blue Shield United of Wisconsin*,
727 F. Supp. 472 (N.D. Ill. 1990) ....................................................................12

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*,
423 F.3d 137 (2d Cir. 2005) ..............................................................................8

## STATUTES

15 U.S.C. § 1115(b) ...........................................................................................13

## OTHER AUTHORITIES

Fed. R. Civ. P. 65(c) ..........................................................................................25

# TABLE OF AUTHORITIES
(continued)

**Page**

*McCarthy on Trademarks* ................................................................................................ passim

Defendant Nike, Inc. ("Nike") respectfully submits this memorandum of law in opposition to plaintiff God, Gold and Moore, LLC d/b/a Psycho Bunny's ("Plaintiff") Motion for a Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery.

## PRELIMINARY STATEMENT

The Court should summarily deny Plaintiff's motion summarily for three independently powerful reasons. No discovery or evidentiary hearing is required in order to conclude that the motion is meritless.

First, Plaintiff cannot carry its most important burden: showing that it will suffer irreparable harm in the absence of an injunction. Plaintiff admits in its own papers that, by February 2012, it knew Nike was selling the allegedly infringing goods—a Nike-branded "Sinister Hare" design running tee. Plaintiff did not seek judicial relief until more than ten months later. This lengthy, unexplained failure to take legal action in the face of believed infringement belies Plaintiff's assertions of irreparable harm. In this Circuit, far shorter delays have justified rejection of TROs and preliminary injunctions.

Second, Plaintiff cannot show that it is likely to succeed on the merits at trial. The central question of its infringement claim is whether potential consumers, seeing a "Sinister Hare" shirt for sale, are likely to believe that the product originates with Plaintiff rather than Nike. The factors considered in analyzing this issue, *see Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), all point strongly against a finding of likely confusion. Significantly, the "Sinister Hare" design is just that—an ornamental design on clothing, not a mark. There can be no likely confusion with the PSYCHO BUNNY marks because clothing bearing the "Sinister Hare" design is plainly branded as originating with Nike.

The "Sinister Hare" design is an outgrowth of prior Nike art. It is a cartoon of a hare, wearing a Swoosh-emblazoned, contrasting-color sweatband, which has track shoe spikes for

teeth.  Below the head is a running bib: a rectangle, with a runner's number "001," as typically worn in road and track races, and the prominent NIKE word mark and Nike trademark "Sunburst" graphic.  The running bib is superimposed on a set of crossbones:



Shirts with the "Sinister Hare" design are unmistakably branded as products of Nike.  In addition to the Nike Swoosh, the Nike Sunburst, and word mark "NIKE" appearing on the "Sinister Hare" design, each shirt has another Swoosh on its sleeve, the Swoosh appears on the printed-on product label and the NIKE mark appears on a repeated band on the inside of the shirt's neck, (both are visible when the shirt is displayed for sale), the Swoosh appears on hangtags attached to the garment, and most of the shirts are sold through Nike, or in a "Nike" section of a retail store or an on-line retailer.  Conversely, the "Sinister Hare" design is not used where consumers expect to see marks on clothing, as on hangtags or labels.

Plaintiff fails on all relevant *Polaroid* factors.  First, there is little similarity between the PSYCHO BUNNY graphic mark and the "Sinister Hare" design: the former merely adds rabbit ears to the traditional cartoon skull and crossbones; while the head of the "Sinister Hare" is not a skull and has many other elements in addition to crossbones, as described above.  Moreover, when the "Sinister Hare" product is viewed as a whole, as it must be, the dissimilarity is even greater, as every "Sinister Hare" shirt prominently bears Nike's famous Swoosh and other NIKE

house marks.  Second, the name "Sinister Hare" is neither synonymous with, nor a play on, PSYCHO BUNNY.  Third, the PSYCHO BUNNY graphic mark is weak, as the field of such marks is crowded: there are many registered marks, and many others in common-law use, featuring a skull with the ears of a rabbit or similar animal.  Fourth, the parties' respective goods are sold in different channels, and to different markets, for different genres of apparel.  Fifth, there is no admissible evidence of actual confusion: Plaintiff's survey has fatal methodological flaws that compel its rejection; and a few e-mails from customers claiming that Nike has copied from Plaintiff merely confirms that no one is confused as to who makes "Sinister Hare" design shirts.  Sixth, Plaintiff's last-ditch attempt to assert that Nike intentionally sought to create confusion lacks any foundation in fact and is no more than a speculative leap by Plaintiff.

Third, Plaintiff has also failed to show another foundational requirement for its extraordinary request for preliminary injunctive relief, that money damages would not be an adequate remedy for its alleged injury.  In *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010), the Second Circuit overruled its prior precedent on this issue, holding that irreparable injury may not be presumed in infringement cases, and that the plaintiff bears the burden of showing that money damages would be inadequate.  Strangely, Plaintiff does not even mention *Salinger* and instead relies on the obsolete cases that *Salinger* overruled.  Finally, Plaintiff has not shown that the balance of hardships, or the public interest, favors the grant of an injunction.  The Court should therefore deny the motion in its entirety.

## STATEMENT OF FACTS

### I.   NIKE'S "SINISTER HARE" DESIGN

Nike is the world's leading innovator in athletic footwear, apparel, equipment and accessories.  The creation of the "Sinister Hare" design, pictured below, was an independent creation on the part of members of Nike's design team.  (Govey Decl. at ¶¶ 2, 6-9.)



The "Sinister Hare" is a running tee graphic inspired by a cultural idiom prevalent within Nike's long-time running culture. (*Id.* ¶ 6.) In this culture, the pace setter in a race is often referred to as the "hare," in homage to the fabled story of the Tortoise and the Hare, with the hare as a symbol of speed. (*Id.* ¶ 6.) Nike has designed other similar graphics to the "Sinister Hare" that reflect this homage. (*See* Govey Decl., Ex. B.)

The portion of the "Sinister Hare" design containing crossbones likewise had nothing to do with Plaintiff. (Govey Decl. at ¶ 7.) Nike has created and sold multiple graphic tees over the years that contained skull and crossbones designs. (*Id.* ¶ 7.) One such design used track shoe spikes for the teeth of the skull—this design was the inspiration for the track spike teeth ultimately used in the "Sinister Hare" design. (*Id.*)

Nike uses the "Sinister Hare" design, and the consumer is likely to perceive that design, as an ornament, not as a trademark or brand. (Govey Decl. at ¶ 6.) The "Sinister Hare" design is not used on hangtags, labels, or other locations on a garment where the trademark of a clothing line or manufacturer traditionally appears. (*Id.* at ¶ 9.) In contrast, the "Sinister Hare" design shirts and their hangtags and labels prominently feature several famous Nike house marks, including the word mark NIKE, the Swoosh mark, and the Sunburst mark. (*Id.* at ¶ 9, Ex. A.) On shirts bearing the "Sinister Hare" design, Nike displays these famous marks in the traditional trademark locations, such as the hang tag, label, and sleeve. (*Id.* at ¶ 9.)

Nike shirts bearing the "Sinister Hare" design are typically sold in Nike's own brick and mortar stores, on Nike.com, and in retail stores specializing in sports-related goods such as Dick's Sporting Goods, Finish Line USA, and Road Runner Sports. (Decl. of W. Forbes Campbell at ¶ 2.) These are generally displayed in separate "Nike" sections of such stores.

II.    PLAINTIFF'S PSYCHO BUNNY MARKS

Psycho Bunny was allegedly founded in the Spring of 2005, when it offered a collection of handmade neckties bearing the image of a skull and crossbones with rabbit ears attached to the skull. (Duvdevani Decl. Ex. B.) Since its inception, the PSYCHO BUNNY product line has grown and now includes scarves, polo shirts, oxfords, socks, sweaters, ski hats, cufflinks and a small leather goods. Plaintiff does not sell PSYCHO BUNNY running apparel. (*Id.*)

Plaintiff alleges two registered marks—the word mark PSYCHO BUNNY ("Word Mark") and a graphic mark featuring the rabbit-eared skull and crossbones ("Graphic Mark"). In contrast with Nike's "Sinister Hare" design, which is merely a large ornament used on one style of Nike running shirt, Plaintiff places its PSYCHO BUNNY marks in locations where consumers traditionally expect to find source-identifying brands, such as on labels. Similarly, Plaintiff places a small version of the Graphic Mark on its clothing in locations where brand logos typically appear, such as on the breast area of shirts. (*See* Godley Decl., Exs. C-D.)

This consumer-oriented understanding of brands versus design is confirmed by the registration history of Plaintiff's Graphic Mark. Plaintiff originally submitted one of its ties bearing the Psycho Bunny image on the front to the USPTO as a specimen. (Duvdevani Decl. Ex. A.) The PTO refused registration on the grounds that the proposed mark is a "decorative or ornamental feature of the goods and would not be perceived as a mark by the purchasing public." (*Id.*) The PTO further stated that:

[W]here consumers have been conditioned to recognize trademarks in a certain location, as on the breast area of a shirt, ornamental matter placed in a different location is less likely to be perceived as an indication of source. *See* TMEP §1202.03(b). The specimen consists of photos of the goods, and the proposed mark is ornamental as used on the specimen because it appears to simply be decoration on the ties. The mark is placed in a pattern on the front of the tie and as a result, consumers will see the mark as a decorative element of the goods and not as a source indicator. (*Id*.)

Plaintiff was only able to overcome this refusal only by representing that its Graphic Mark would be used in a traditional location for branding, and submitting a label bearing its mark which is to be affixed to its tie. Plaintiff stated:

It is submitted that by affixing this lable [sic] to the goods in question, namely ties, the location of a mark on the goods is part of the environment in which the mark is perceived by the public and may influence how the mark is perceived. Consumers have been conditioned to recognize trademarks in a certain location, and for ties that includes the label. The specimen is the label which is affixed to the tie and is not ornamental at all. As such, there is no likelihood that consumers will see the mark as a decorative element of the goods and not as a source indicator. (*Id*.)

III. PLAINTIFF'S PSYCHO BUNNY GRAPHIC MARK IS ONE OF MANY IN A CROWDED FIELD

There is nothing unique about the PSYCHO BUNNY Graphic Mark. In fact, the use of rabbit marks with skulls or crossbones is widespread in the apparel space. (Duvdevani Decl., Ex. C.) Similarly, quick internet searches reveal that there are a plethora of uses of stylized rabbit heads with crossbones existing in the marketplace on everything from t-shirts, stickers, jewelry, pins and other novelty merchandise—this motif is not unique. (*Id*. at Ex. D.)

IV. PLAINTIFF'S DELAY IN SEEKING JUDICIAL INTERVENTION

Plaintiff admits that it discovered that Nike was offering its "Sinister Hare" design for sale by February 2012, over ten months ago. (Pl. Br. at 5.) Plaintiff does not explain why it waited until four to five months later, on June 7, 2012, to send a cease and desist letter to Nike asserting its current claims. (Pl. Br. at 7.) Nike considered carefully and rejected Plaintiff's

claims on July 3, 2012. Plaintiff does not explain why it did not sue immediately then, but instead reasserted its rejected claim in a second letter. Nike again consider carefully Plaintiff's claims and sent back a lengthy rejection letter dated August 6, 2012. (Pl. Br. at 8.) Plaintiff does not explain why it then waited another four months, and took no legal action until it filed its complaint and motion in this Court on December 7, 2012, claiming that it would suffer irreparable harm absent immediate relief. (D.I. 1.)

## ARGUMENT

### I. PLAINTIFF HAS UNDULY DELAYED IN SEEKING INJUNCTIVE RELIEF AND ITS MOTION SHOULD BE DENIED ON THIS BASIS ALONE

While Nike demonstrates below that Plaintiff has failed to carry its burden of proving each of the elements necessary for a TRO or a preliminary injunction, the Court need not reach those issues. The most important prerequisite for issuance of a preliminary injunction is proof by the movant that it will suffer irreparable injury if the injunction is not granted. *Faiveley Trans. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). Plaintiff's conduct demonstrates that denying its motion will not cause any irreparable injury.

"[A] plaintiff's failure to act promptly in seeking injunctive relief 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'" *Raghavendra v. Trustees of Columbia Univ.*, No. 06 Civ. 6841, 2008 WL 2696226, at *12 (S.D.N.Y. July 2, 2008)(quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1957)). It is the rule that a "presumption of irreparable harm is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief." *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995). The time permitted is short. "[C]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." *Gidatex, S.R.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d

417, 419 (S.D.N.Y. 1998). "[D]elays of as little as ten weeks [are] sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction." *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005).

Plaintiff's own conduct is rife with unexplained delay. Plaintiff's founding member admits that he knew, by February 2012, all of the matters now alleged in Plaintiff's complaint—namely, that Nike was offering shirts with a "Sinister Hare" design that Plaintiff believed was infringing of the PSYCHO BUNNY marks. Plaintiff was in a position to seek relief from this Court over ten months ago, yet did nothing. Plaintiff did not even notify Nike of its infringement allegations until it sent a letter on June 7, 2012. When Nike rightfully rejected these claims on July 3, 2012, again Plaintiff did not rush to court. It wrote another letter, repeating its assertions. When Nike again rejected those assertions, by letter of August 6, 2012, Plaintiff waited another four months before suing. Yet in its motion papers Plaintiff makes unsupported claims that it will suffer irreparable harm in the absence of immediate injunctive relief. (Decl. of R. Godley, Exs. F-I.). No explanation is given for any of these delays.

It is undisputed that since February 2012, Plaintiff knew about Nike's sale of its "Sinister Hare" design shirts, and was in a position to move for preliminary relief. It delayed for close to a year, well beyond the two months or ten weeks which is typically the most delay that federal courts will tolerate. Plaintiff has thus demonstrated, by its delay and failure to act, that it will not suffer any irreparable injury absent a preliminary injunction.

## II. PLAINTIFF HAS FAILED TO MEET ITS BURDEN ON A MOTION FOR A PRELIMINARY INJUNCTION

### A.    The Stringent Standard for a Preliminary Injunction

This Court has stated that "[a] preliminary injunction is an extraordinary remedy that should not be granted as a routine matter." *Plasmart, Inc. v. Wincell Int'l Inc.*, 442 F. Supp. 2d

53, 56 (S.D.N.Y. 2006) (Castel, J.) (internal citations omitted); *accord, Agrippa, LLC v. Bank of America, N.A.*, 10 Civ. 9478, 2011 WL 102677, at *3 (S.D.N.Y. Jan. 11, 2011).  A preliminary injunction may not issue unless the movant carries the burden of persuasion as to all prerequisites.  *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (emphasis added); *Jackson v. Am. Plaza Corp.*, No. 08-cv-8980(PKC), 2009 WL 1158829, *2 (S.D.N.Y. Apr. 28, 2009) (Castel, J.) (same).

A party seeking a preliminary injunction must show: (1) that it is likely to suffer irreparable injury if the injunction is not granted, and (2) either a likelihood of success on the merits of its case or sufficiently serious questions going to the merits to make them a fair ground for litigation, and (3) a balance of hardships tipping decidedly in its favor.  *GoSmile, Inc. v. Dr. Jonathan Lewis, D.M.D., P.C.*, 769 F. Supp. 2d 630, 636 (S.D.N.Y. 2011) (Castel, J.); *Jackson*, 2009 WL 1158829, at *2.  Of these, irreparable injury is "the single most important prerequisite for the issuance of a preliminary injunction."  *Jackson.*, 2009 WL 1158829, *6 (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990)).  The injury must be "neither remote nor speculative, but actual and imminent."  *Id*. (quoting *Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir.2007)).  The movant must also demonstrate that the "public interest would not be disserved" by the issuance of the preliminary injunction.  *Salinger*, 607 F.3d at 80.  Plaintiff fails to carry its burden on all of these required elements for a preliminary injunction—and most importantly, it fails to show irreparable injury.

Notably, Plaintiff takes the position that it is entitled to a presumption of irreparable injury if it shows that it is likely to succeed on the merits of its infringement claims.  (Pl. Br. at 8-9.)  It has made no other effort to show that it would suffer injury, not fully remediable in money damages, if an injunction were denied.  But Plaintiff's argument rests on bad law.

The Second Circuit and district courts in this Circuit had previously held in patent, copyright and trademark cases that a plaintiff's establishment of a prima facie case of infringement created a presumption of irreparable injury and was a sufficient showing for the granting of an injunction. However, in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), the Supreme Court held that in a patent case, a plaintiff must prove each of the traditional four factors of equity, including irreparable injury, to obtain injunctive relief. No presumption of irreparable injury was warranted. In *Salinger*, the Second Circuit applied *eBay* to a copyright case, and held that in both the patent and copyright contexts, a finding of likelihood of success on the merits is not enough to justify a preliminary injunction. 607 F.3d at 74-75 ("[O]ur Circuit's standard is inconsistent with the 'test historically employed by courts of equity' and has, therefore, been abrogated by [*eBay, Inc. v. MercExchange, L.L.C.*]."). The *Salinger* court went on to hold "we see no reason that *eBay* would not apply with equal force to an injunction in *any* type of case." *Id*. at 78 n. 7 (emphasis in original).

Since *Salinger*, courts in the Second Circuit have held that the requirement of proof of irreparable injury is also applicable in trademark cases. *See, e.g., New Look Party Ltd. v. Louise Parker Ltd.*, 11-cv-6433(NRB), 2012 WL 251976, *2 (S.D.N.Y. Jan. 11, 2012); *People's United Bank v. Peoplesbank,* 08 Civ. 01858, 2010 WL 2521069, at *3 (D. Conn. Jun. 17, 2010).

Plaintiff has made no effort to show that if it prevailed on infringement, it would also suffer irreparable injury. In any event, because Plaintiff fails to show either a likelihood of irreparable harm or a likelihood of success on the merits, its motion fails under either standard.

B.    Plaintiff is Unlikely to Succeed on the Merits of its Claim

Plaintiff contends that it is likely to succeed on the merits of its claims because Nike's use of the "Sinister Hare" design on shirts "would likely cause confusion as to the origin or sponsorship of the defendant's goods with plaintiff's goods." *GoSmile, Inc.*, 769 F. Supp. 2d. at

636 (quoting *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009)).

To determine whether a plaintiff can carry its burden of showing likelihood of confusion at trial, courts in the Second Circuit consider the eight factors first identified in *Polaroid*, 287 F.2d at 495: (1) the strength of plaintiff's mark; (2) the similarity of the parties' marks; (3) the proximity of the parties' products in the marketplace; (4) the likelihood that the plaintiff will bridge the gap between the products; (5) actual confusion among consumers; (6) the defendant's intent in adopting its mark (i.e., bad faith); (7) the quality of the defendant's product; and (8) the sophistication of the relevant consumer group.[1] Plaintiff has failed to show that were the trier of fact to balance these factors, it would conclude that consumers will believe that the "Sinister Hare" design shirts originate with Plaintiff. To the contrary: all the factors either favor a finding of no confusion or are neutral.

### 1. Plaintiff's PSYCHO BUNNY Marks Are Weak

Plaintiff's PSYCHO BUNNY marks are weak, due to the many similar marks used in the apparel field. *Time, Inc. v. Petersen Publ'g Co. LLC,* 173 F.3d 113, 118 (2d Cir. 1999). "The strength of a mark is determined by its tendency to uniquely identify the source of the product." *Star Indus., Inc. v. Bacardi & Co., Ltd.*, 412 F.3d 373, 384 (2d Cir. 2005). "A mark that is hemmed in on all sides by similar marks on similar goods or services cannot be very 'distinctive.'" *McCarthy on Trademarks* § 11:85. In such instances, customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other. *Id.*; *see also Peoples United Bank v. Peoplesbank*, 3:08cv01858, 2010 WL 2521069, at *5 (D. Conn. 2010) ("PeoplesBank" is a weak mark because there were currently 159 FDIC insured

---

[1] While Nike does not use the "Sinister Hare" design as a mark, and "Sinister Hare" is not likely to be viewed as a mark when the product is viewed in its entirety, Nike nevertheless

banking institutions with names containing the word 'people'"). "In a 'crowded' field of look-alike marks, each member of the crowd is relatively 'weak'" in its ability to prevent use by others in the crowd." *McCarthy on Trademarks* § 11:85; *see also One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1164 (9th Cir. 2009); *Original Joe's Inc. v. Pinsonneault Holdings, LLC*, No. 09-cv-05203(CRB), 2009 WL 4254434 (N.D. Cal. 2009); *Washington Nat. Ins. Co. v. Blue Cross and Blue Shield United of Wisconsin*, 727 F. Supp. 472 (N.D. Ill. 1990); *Michael Caruso and Co., Inc. v. Estefan Enterprises, Inc.*, 994 F. Supp. 1454, 1460 (S.D. Fla 1998), *aff'd*, 155 F.3d 353 (11th Cir. 1998).

Here, the apparel industry is crowded with registered marks using stylized rabbit and other animal skulls with crossbones. (Duvdevani Decl., Ex. C.) As a result, there is little individual distinctiveness in Plaintiff's PSYCHO BUNNY marks and consumers are expected to know how to distinguish goods with the PSYCHO BUNNY Graphic Mark from goods bearing other animal skull and crossbones marks.[2] This factor thus shows that consumers are not likely to be confused as to the origin of Nike-branded shirts with the "Sinister Hare" design.

> 2. *The PSCYHO BUNNY Graphic Mark is Dissimilar from Nike-Branded Apparel Bearing the "Sinister Hare" Design, and the Dissimilarities are Heightened by Nike's Prominent Use of its House Marks on "Sinister Hare" Design Shirts*

"Of salient importance among the *Polaroid* factors is the 'similarity of the marks, which attempts to discern whether the similarity of the marks is likely to cause confusion among potential customers.'" *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*,

---

analyzes Plaintiff's PSYCHO BUNNY marks and Nike's "Sinister Hare" design under the *Polaroid* factors for purposes of this opposition brief.

[2] In addition, the PTO registrations for the PSYCHO BUNNY marks were only issued in 2010, and thus are not presumptively valid. *See* 15 U.S.C. § 1115(b) (where the mark has been, and is still, in continuous use five years from registration, "the registration shall be conclusive evidence of the validity of the registered mark…").

426 F.3d 532, 537 (2d Cir. 2005). "To apply this factor, courts must analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed and 'the totality of factors that could cause confusion among prospective purchasers.'" *Id.*; *see also Nabisco Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 47 (2d Cir. 2000) ("[I]n determining [confusion], we must 'appraise the overall impression created by . . . the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers.'") (quoting *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998)).

The underlying cause of consumer confusion is that two marks appear similar enough that a consumer concludes that they must come from the same source. *Louis Vuitton,* 454 F.3d at 117. Under the anti-dissection principle, the similarity analysis *must* assess the marks in their entirety without dissecting out any one component. *See McCarthy on Trademarks* § 11:27; *see also Nabisco,*220 F.3d at 47; *Gruner+ Jahr USA Pub. v. Meredith Corp.*, 991 F. 2d 1072, 1078 (2d. Cir. 1993); *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.,* 704 F. Supp. 2d 305, 333–34 (S.D.N.Y. 2010).

Here, the dissimilarities between the Plaintiff's Graphic Mark and Nike's design overwhelm the one thing they have in common: their shared concept of an animal skull and crossbones (which, as noted above, is the same concept found in many other marks). First, Nike's "Sinister Hare" design differs visually from Plaintiff's PSYCHO BUNNY Graphic Mark. Nike's "Sinister Hare" design contains a cartoonish or anime depiction of a circular rabbit head with pointed solid ears and a pair of intersecting crossbones. It is not obviously a skull, although it can be read that way. Because this image is intended to evoke the hare as a symbol of speed, the head is encircled by a sweatband (in a contrasting color) that contains Nike's prominent

13

Swoosh mark and uses track shoe spikes in lieu of the prominent teeth of a hare. (Govey Decl. at ¶ 7.) The crossbones beneath the rabbit hare are partially covered by a racing bib bearing number "001" and containing the NIKE RUNNING word mark and Nike's Sunburst mark. (Govey Decl. Ex. A.) The angry expression on the hare represents pain, as many runners believe that running with or through pain is a sign of courage. (Govey Decl. at ¶ 6.) Before developing the "Sinister Hare" design, Nike developed other designs that reflect some of these references to runner culture. (Govey Decl., Ex. B.)

In comparison, Plaintiff's PSYCHO BUNNY Graphic Mark consists essentially of a realistic human-shaped skull and crossbones with tall, narrow rabbit ears affixed to the skull. The ears are outlined, and sometimes shaded pink, in the center, giving them a closer resemblance to actual rabbit ears. There is no "bib" or other design overlapping the crossbones.

Furthermore, Nike's "Sinister Hare" design and Plaintiff's PSYCHO BUNNY Graphic Mark have a markedly different appearance to the consumer when used on apparel. Nike's "Sinister Hare" design has been used on shirts as a large, multicolored ornamental graphic that is printed directly onto the t-shirt and that takes up a significant portion of the front of the shirt. It is plainly a decorative design. The PSYCHO BUNNY Graphic Mark, in contrast, is embroidered in the upper right hand corner of the chest of its polo shirts and oxfords, and at the center of its baseball caps. It is very small in comparison to the overall item of apparel on which it is found. The PSYCHO BUNNY Graphic Mark is located, and has the size and appearance, of well-known logo marks that are placed on apparel such as the Lacoste alligator or the Ralph Lauren polo player. Consumers understand that small logos of this nature are a brand used on the full line of a manufacturer's clothing, whereas a manufacturer may use many different, larger designs on items within a single clothing category (such as shirts).

Nike does not use the "Sinister Hare" design as a mark or brand, but as a design. Nike brands "Sinister Hare"-design goods, as it does all of its other products, with part of its large portfolio of very valuable, world-famous trademarks. A consumer who sees a "Sinister Hare" shirt for sale in a store will also see the highly visible Nike marks which denote the shirt's origin in all the places a consumer would expect to find a trademark.

The presence of such "house marks" on a defendant's goods, and its absence on a plaintiff's goods, tends to eliminate confusion that is claimed from the fact that both goods also bear similar marks or graphics. *See Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000) (use of DENTYNE in challenged DENTYNE ICE mark "significantly reduces, if not altogether eliminates" the likelihood that consumers will be confused between DENTYNE ICE and plaintiff's ICE BREAKERS mark). Similarly, Nike's "Sinister Hare" design shirts, as the consumer sees them for sale contain Nike's house marks in multiple visible locations. No reasonable consumer would believe that the shirt originates with any company but Nike.

### 3. The Parties' Products Are Not Sold in the Same Channels of Trade

"The proximity inquiry asks to what extent the two products compete with each other." *Brennan's Inc. v. Brennan's Rest., LLC*, 360 F.3d 125, 134 (2d Cir. 2004). "In assessing commercial proximity, courts should compare all relevant aspects of the products, including price, style, intended uses, target clientele, and channels of distribution." *Prof'l Sound Servs., Inc. v. Guzzi*, 349 F. Supp. 2d 722, 734 (S.D.N.Y. 2004).

The parties' respective products and markets are distinct. Nike sells a wide array of footwear, sports apparel, and other goods for exercise and competition. Plaintiff sells a range of "preppie"-style clothing, similar to that found in Brooks Brothers and Ralph Lauren Polo lines, such as high-end neckties, scarves, polo shirts, oxfords, socks, sweaters, ski hats, cufflinks and a range of small leather goods. (Duvdevani Decl. Ex. B.) In fact, while Plaintiff sells many

different types of apparel, Plaintiff sells only four styles/colors of tees. (*Id.*) The vast majority of Nike's apparel and goods are sold in Nike's own brick and mortar stores, on Nike.com, and throughout the United States in retail stores specializing in sports-related goods such as Dick's Sporting Goods, Finish Line USA, and Road Runner Sports. (Decl. of W. Campbell at ¶ 3.) In contrast, Plaintiff sells its goods through its website (www.psycho-bunny.com) as well as in the most expensive general retail department stores, such as Neiman Marcus, Nordstrom, and Barney's New York. (Pl. Br. at 3.) Nike's target consumer is everyone, including men, women and children of all ages, while Plaintiff primarily targets men (although it recently started offering limited items of women's apparel). (Duvdevani Decl. Ex. B.) Finally, Plaintiff's products are sold at markedly higher price points than the shirts and apparel bearing Nike's "Sinister Hare" design. (Duvdevani Decl. Ex. B.) These differences diminish proximity, and any likelihood of confusion, between the products. *See Estee Lauder, Inc. v. The Gap, Inc.,* 108 F.3d 1503, 1511 (2d Cir. 1997).

Given the distinct differences in all relevant aspects of the parties' products, including price, style, intended uses, target clientele, and channels of distribution, there is minimal, if any, commercial proximity and this factor favors Nike.

4.    *There is Insufficient Evidence that Plaintiff will Bridge the Gap and Branch into Nike's Sports Apparel Market*

The appropriate question for this factor is whether the plaintiff is likely to enter defendant's area of business or whether the average consumer would perceive that possibility as likely. *See 24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness. LLC*, 447 F. Supp. 2d 266, 277 (S.D.N.Y. 2006); *Federal Express Corp. v. Federal Espresso, Inc.,* No. 97-cv-1219 (RSP/GJD), 1998 WL 690903, at *16 (N.D.N.Y. Sept. 30, 1998).

While Plaintiff claims that it plans to begin to compete with Nike, it provides no evidence to support this. Plaintiff has made a name for itself in the high-end men's business and casual apparel industry via "a range of cashmere scarves in classic tartans, pima cotton polo shirts…, fine cotton oxfords with mother of pearl buttons, colorful pima cotton socks, luxurious merino sweaters, supergeelong ski hats, hand-enameled sterling silver cufflinks and a range of small leather goods produced in partnership with Ettinger of London." (Duvdevani Decl. Ex. B.) There is no indication in Plaintiff's own literature that it plans to alter the brand identity it has built selling these items to branch into active sports apparel, nor that it will begin to sell these future products via the same channels as Nike.

### 5. No Evidence of Actual Confusion Exists

Although likelihood of confusion is not predicated on the existence of actual confusion, this is one of the most indicative and "particularly relevant" factors in this suit. *Virgin Enterprises, Ltd. v. Nawab,* 335 F.3d 141, 151 (2d Cir. 2003). Without proof that a defendant's use of a mark has actually caused confusion, there is less chance that it likely will in the future. *Id.* Even more, if there is proof that consumers are actually *not* confused by a defendant's use of a mark, then that is even stronger proof that there is no likelihood of confusion.

Plaintiff asserts that it has shown evidence of actual consumer confusion based upon exactly two comments and complaints: a May 12, 2012 e-mail from a "customer" with a picture of a Nike "Sinister Hare" shirt with the title "Nike is ripping your logo," and a June 24, 2012 Facebook posting, stating that "Nike has totally copied your concept and made a shirt called 'Sinister Bunny.'" (Decl. of R. Godley, Ex. E.) To the contrary, these show only that the two correspondents knew that the "Sinister Hare" design originated with Nike. There is no evidence that they bought or thought of buying a "Sinister Hare" design shirt believing it to be produced by Plaintiff. These communications show no confusion at all, much less the only confusion that

matters in Lanham Act cases: that which affects consumer purchases. *Lang v. Retirement Living. Pub. Co., Inc.,* 949 F.2d 576, 582–83 (2d Cir. 1991).

Plaintiff has also submitted the declaration of an alleged survey expert named Philip Zerillo, who asserts that he has conducted three Internet surveys of 600 respondents showing significant confusion between "the Psycho Bunny and Sinister Hare brands and logos." (*See* P. Zerillo Decl. ¶¶ 5-6.). Although Nike has not been able to yet retain an expert to examine Mr. Zerillo's study, it is already clear that he committed basic flaws in methodology that would require exclusion of his study and opinion were this matter brought to trial.

"In conducting a survey, selection of the proper universe is a crucial step, for even in circumstances where proper questions are asked in a proper manner, if the wrong persons are asked, the results are likely to be irrelevant." *McCarthy on Trademarks* § 32:159. Mr. Zerillo's first major misstep is his failure to identify the universe that he selected to study. Indeed, while he mentions that he pre-tested the survey for readability with a convenience sample of 62 college students, he fails to identify the nature of the 600 respondents. The relevant universe to survey is the potential buyers of the *junior user's* goods or services – here Nike's goods. *Id.* (citing *Hutchison v. Essence Communications, Inc.,* 769 F. Supp. 541, 559-60 (S.D.N.Y. 1991) ("It is well-settled in this circuit that the universe of the survey must include potential purchasers of the junior user's product.")). Plaintiff's failure to identify the universe of participants surveyed renders it impossible to properly evaluate the weight of the resulting survey data and thus makes the survey non-probative on confusion. *McCarthy on Trademarks* § 32:162.

Moreover, a properly-conducted survey must provide respondents with an opportunity to see the goods in question as a consumer, contemplating a purchase, would see them. "The closer the survey methods mirror the situation in which the ordinary person would encounter the

trademark, the greater the evidentiary weight of the survey results." *THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 231 (S.D.N.Y. 2010) (citing *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 340 F. Supp. 2d. 415, 433 (S.D.N.Y. 2004)). A survey must be able to simulate "actual marketplace conditions in which consumers encounter the parties' products so as to be a reliable indicator of consumer confusion." *THOIP*, 690 F. Supp. 2d at 232. Where a survey fails to "approximate actual market conditions, [this] can provide grounds for inadmissibility." *Id.*

In *THOIP*, the court rejected a confusion survey based on the use of two shirts manufactured by Disney, finding, among other flaws, that the survey failed to replicate actual market conditions: instead, it showed both plaintiff and defendant's goods seriatim. *Id.* at 235-238. Mr. Zerillo likewise showed respondents in his surveys a Nike "Sinister Hare" design shirt and a cap with a PSYCHO BUNNY Graphic Mark seriatim, even though Mr. Zerillo cited no evidence that the products are sold side-by-side. The shirts used in the survey rejected in *THOIP* "did not bear the neck labels and hang tags that would have been attached to the shirts in the marketplace." 690 F. Supp. 2d at 238. The Court found that "source information" provided by these tags "would have diminished confusion not only as to source but also as to association and permission. Labels are not unnoticed by consumers; rather they serve as important sources of information, including brand identification." *Id.* at 239. The failure of the survey to replicate market conditions "severely diminishes the reliability and probative force of this survey." *Id.*

The same is true of the Zerillo survey. Internet respondents were not shown actual "Sinister Hare" shirts, as retail buyers would see them. From Zerillo's declaration, it appears that they were shown a small Internet image of the "Sinister Hare" design shirt. They were not allowed to examine the goods themselves as a consumer; if they had, the respondents would have seen the many Nike house brands on the product, as well as labels indicating that the product

originated with Nike. Even Internet purchasers can zoom in on the image of a "Sinister Hare" shirt and clearly see the Nike marks.[3]

While many other flaws exist with the survey, including the lack of a proper control, the two outlined above demonstrate that the survey would likely be excluded if offered at trial. The Court should therefore give no weight to Zerillo's conclusions of confusion on this motion.

> 6. *Nike Developed its Sinister Hare Graphic Independently; No Bad Faith Exists*

Lacking any evidence of actual or likely confusion, Plaintiff falls back on unsupported and puzzling assertions that Nike, owner of some of the world's most famous trademarks, intentionally sought to deceive consumers in developing the "Sinister Hare" design, and thus adopted the design in bad faith. This leap that the Sinister Hare is a copy of the PSYCHO BUNNY because of two shared elements is revealed as quite speculative in the face of the sheer numbers of ways rabbit/crossbones images appear in the marketplace as marks or as designs. (Duvdevani Decl. Exs. C-D.) Plaintiff's assertions that Nike would be motivated to usurp the goodwill of a relatively unknown company whose image conflicts with the brand Nike has built for decades is not credible. To obtain any benefit from the "intent" factor, the plaintiff must show that the defendant intended to confuse the public, not just that it was inspired to use a concept also present in the plaintiff's mark. *Playtex Prods., Inc. v. Georgia-Pacific Corp.,* 390 F.3d 158, 166 (2d Cir. 2004). Here, the evidence shows overwhelmingly that Nike developed its "Sinister Hare" design independently, as an evolution from prior running shirt designs that used "hare" and "skull and crossbone" motifs. The intent factor thus favors Nike.

---

[3] *See* http://www.footlocker.com/product/model:176440/sku:64969428/nike-sinister-hare-t-shirt-womens/soar/reflective-silver/&SID=9114&inceptor=1&cm_mmc=SEM-_-Engine-_-Google-_-Plusbox

### 7. *Quality*

"The quality factor of *Polaroid* is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Star Indus.*, 412 F.3d at 389. Here, there is no significant concern that Plaintiff's product could be jeopardized by the quality of Nike's products, since both parties offer high quality products, thus this factor is neutral.

### 8. *Sophistication of the Relevant Consumer Group Does Not Favor Plaintiff*

The final factor, the sophistication of consumers, does not favor Plaintiff – it is at most neutral. In *THOIP*, 736 F. Supp. 2d at 714-15, the court concluded that there was no unusual sophistication among purchasers of "relatively inexpensive [children's] T-shirts." However, it also noted that "[w]hen purchasing a shirt, whether to keep for oneself, to give as a gift, or for some other purpose, an ordinary consumer can be expected to examine the shirt, consider alternatives, and even try it on. Furthermore, ordinary purchasers are sophisticated enough to recognize Disney's famous characters and name." *Id.* The same conclusion is true here: the actual potential consumer of Nike's "Sinister Hare" design shirts will examine the shirts and recognize the famous Nike logos on the shirt, label, and hangtag. No reasonable juror could conclude that consumers would believe that these shirts originate with Plaintiff. In conclusion, the *Polaroid* factors strongly weigh against any ultimate finding of likelihood of confusion, and Plaintiff has thus failed to carry its burden of showing likely success on the merits of its claims.

### C. Plaintiff has not Shown Irreparable Harm

As shown above, Plaintiff's assertion of irreparable harm is undermined by its failure to sue until more than ten months after it knew that of the alleged infringement. Even if this stark fact were ignored, Plaintiff would not be entitled to any presumption of irreparable harm, under

*Salinger* and its progeny. Rather, Plaintiff would be required to "make an independent showing of such harm." *New Look Party Ltd.*, 2012 WL 251976, at *10.

Plaintiff cannot, and indeed did not even attempt, to provide independent evidence of irreparable harm. Its conclusory statement that its "good-will and reputation built up through years of hard work will be irreparably harmed" absent an injunction (Pl. Br. 11) is no substitute for proof. *M & G Electronics Sales Corp. v. Sony Kabushiki Kaisha*, 250 F. Supp. 2d 91, 105 (E.D.N.Y. 2003). Likewise, Plaintiff has made no attempt to show that, in the event a trial produced a judgment of infringement, Nike could not pay damages. *Id.* ("M & G has presented no evidence of … inability of Sony to pay damages if liable.") Nike maintains detailed sales information concerning the "Sinister Hare" design goods, and if Plaintiff should prevail in its suit, monetary damages would be easy to calculate. (Forbes Decl. at ¶ 3.)

D.    The Balance of Hardships and the Public Interest Strongly Favors Nike

Nike need not address where the balance of the hardships lies, given Plaintiff's utter failure to demonstrate irreparable injury or the clear likelihood of success required for injunctive relief. *See, e.g., Bellamy v. Mount Vernon Hosp.*, No. 07-cv-1801 (SAS), 2009 WL 1835939, *7 (S.D.N.Y. June 26, 2009). At any rate, Plaintiff's hardship argument relies on the relative size of the parties and speculation that it would suffer "substantially greater injury" absent an injunction than Nike would with injunctive relief. (Pl. Br. at 19-18, n. 1.) These conclusions are no more sufficient to carry the day on hardship than they are on irreparable harm.

On the other hand, Nike would unquestionably suffer significant hardship if forced to remove its goods from the market. It would not only bear the unrecoverable expense of design and production, it would lose sales for the duration of the case and would need to expend considerable resources attempting to pull its products. Certainly, such an outcome could harm vendor relationships should Nike be forced to contact its customers and demand that its already

purchased inventory be pulled from the shelves. In contrast, if no injunction is issued, Plaintiff will continue to operate in, and service, the market for high-end men's apparel, suffering no actual cognizable injury, as evidenced by its delay in seeking injunctive relief. Moreover, the public interest would be disserved by issuing an injunction where there is no likelihood of confusion. These facts speak for themselves.

III. PLAINTIFF'S UNFAIR COMPETITION CLAIM IS NOT LIKELY TO SUCCEED

Plaintiff's unfair competition claim fails for the same reasons as its Lanham Act claim. To recover for unfair competition, a "plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief," and must show that there was bad faith. *Jeffrey Milstein v. Greger, Lawlor, Roth Inc.*, 58 F.3d 27, 34-35 (2d Cir.1995).

First, Plaintiff cannot show a likelihood of confusion between its marks and Nike's "Sinister Hare" design because, as discussed fully above, the overwhelming balance of the *Polaroid* factors weighs against any likelihood of confusion. Second, Plaintiff cannot demonstrate that Nike has acted in bad faith. While Nike offers evidence showing its intent in choosing the "Sinister Hare" design had nothing to do with Psycho Bunny and everything to do with its continued cultivation of a running culture through its products, Plaintiff offers nothing more than conclusory allegations that "Nike's bad faith is demonstrated by its combined use of Plaintiff's Word Mark and Image Mark, including even after being directed to cease and desist such use." (Pl. Br. at 19.) "But the 'failure to completely abandon the use after receiving a cease and desist letter is insufficient to support an allegation of bad faith' as a matter of law." *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 426 (S.D.N.Y. 2008); *Kelly-Brown v. Winfrey*, No. 11-cv-7875(PAC), 2012 WL 701262, *5 (S.D.N.Y. Mar. 6, 2012) (same). Plaintiff's unsubstantiated speculation is not a substitute for evidence and is insufficient to establish bad faith. Accordingly, Plaintiff is unlikely to succeed on the merits of its unfair competition claims.

## IV.    EXPEDITED DISCOVERY IS NOT WARRANTED

The Court should deny Plaintiff's request for expedited discovery.  To be entitled to such

discovery, plaintiffs must demonstrate each of the following elements:

> (1) irreparable injury; (2) some probability of success on the merits; (3) some
> connection between the expedited discovery and the avoidance of irreparable
> injury; and (4) some evidence that the injury that will result without expedited
> discovery looms greater than the injury that the defendant will suffer if the
> expedited relief is granted.

*Gidatex,* 13 F. Supp. 2d at 420.  Here, as discussed fully above, Plaintiffs cannot demonstrate

irreparable injury or the clear likelihood of success required for injunctive relief.  Thus,

expedited discovery is unwarranted.  *Id*.

Plaintiff relies on two obviously inapposite cases: *Next Phase Distrib., Inc. v. Does 1-27*,

284 F.R.D. 165 (S.D.N.Y. 2012) and *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239 (S.D.N.Y.

2012).  Both involved copyright infringers who used a peer-to-peer Internet file-sharing protocol,

and who could be identified only by their Internet Protocol ("IP") addresses.  *Next Phase*, 284

F.R.D. at 167.  Because Internet Service Providers ("ISPs") are barred by law from disclosing

the IP addresses and identities of its customers without a court-order subpoena, *id*. at 171, courts

have granted expedited discovery to permit plaintiffs to identify John Does, but only where the

plaintiffs show a prima facie case of copyright infringement.  Here, retailers selling "Sinister

Hare" design shirts are readily identifiable, and Plaintiff has failed to make a showing of

trademark infringement.  Plaintiff has not thus not shown good cause for expedited discovery.

## V.     ANY PRELIMINARY INJUNCTION WOULD REQUIRE A SUBSTANTIAL
           BOND

In the event the Court were to grant a preliminary injunction, Plaintiff must post a bond

of not less than $1.25 Million to cover the significant damages Nike would suffer as a result of

having to withdraw product from the marketplace, being unable to sell inventory on hand, and

having to cancel existing orders.  *See* Fed. R. Civ. P. 65(c). "The injunction bond is designed 'to cover any damages that might result if it were later determined that [the applicant] was not entitled to an injunction.'"  *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1055 (2d Cir. 1990).  Nike would face significant damages from the preliminary relief Plaintiff demands.  While no injunction is warranted, if one is given, so must be a significant bond to compensate Nike in the event that Plaintiff fails to prove its claims.

## **CONCLUSION**

For the foregoing reasons, Nike respectfully requests that the Court deny Plaintiff's motion in its entirety.

Dated:  New York, New York
        December 17, 2012

                                    DLA PIPER US LLP


                                    By:    /S/ Andrew L. Deutsch
                                           Andrew L. Deutsch
                                           Tamar Y. Duvdevani
                                           Melissa A. Reinckens
                                           Marc E. Miller

                                    DLA Piper LLP (US)
                                    1251 Avenue of the Americas
                                    New York, New York  10020
                                    (212) 335-4500


                                    *Attorneys for Defendant Nike, Inc.*